NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

January 17, 2020

Linda George, Esq.
577 Summit Avenue
Hackensack, NJ 07601
*Counsel for Defendant Michael Valenti*

Raymond F. Flood, Esq.
Edward W. Cillick, Esq.
39 Hudson Street
Hackensack, NJ 07601
*Counsel for Defendant Craig Cinelli*

John F. Latoracca, Esq.
Bruno and Ferraro
Meadows Office Complex
301 Route 17 North, Suite 211
Rutherford, NJ 07070
*Counsel for Defendant David Barteck*

Craig Carpenito, Esq.
Daniel V. Shapiro, Esq.
Jennifer S. Kozar, Esq.
Jordan M. Anger, Esq.
United States Attorney
970 Broad Street, 7th Floor
Newark, NJ 07102
*Counsel for the United States of America*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

     **Re:**    **United States v. Cinelli, et al.**
              **Criminal Nos. 17-291, 17-302, 17-324 (SDW)**

Counsel:

       This Court is in receipt of the parties' submissions regarding the issues raised at the restitution hearing held on December 4, 2019 (the "Hearing") in this matter. This Court having carefully reviewed those submissions and the underlying testimony and evidence presented at the

Hearing, for the reasons discussed below, orders that Defendants make restitution in the amount of $25,485,568.07.

## DISCUSSION

### A.

The Mandatory Victims Restitution Act ("MVRA"), requires "that defendants who are convicted of or plead guilty to certain crimes pay restitution to their victims."[1] *United States v. Simmonds*, 235 F.3d 826, 830 (3d Cir. 2000). "The purpose of the statute is, 'to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being.'" *United States v. Quillen*, 335 F.3d 219, 222 (3d Cir. 2003) (quoting *Simmonds*, 235 F.3d at 831); *see also United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered...." 18 U.S.C. § 3663A(a)(2). Restitution orders are made "without consideration of the economic circumstances of the defendant," 18 U.S.C. § 3664(f)(1)(A), and "[d]istrict courts have wide discretion to make a reasonable estimate of loss when ordering restitution." *United States v. Faye*, 728 Fed. App'x 120, 124 (3d Cir. 2018). Loss need not be established with precision, but may be "a reasonable estimate of the loss, given the available information." *United States v. Carboni*, 204 F.3d 39, 46 (2d Cir. 2000) (internal citation omitted).

Where "the victim's loss is at issue, the Government has 'the burden of demonstrating the amount of loss sustained by the victim as a result of the offense' by a preponderance of the evidence." *United States v. Weinstein*, Crim. No. 11-701, 2014 WL 12707376, at *1 (D.N.J. June 11, 2014). "[O]nce the Government makes out a prima facie case of the loss amount, the burden shifts to the defendant to provide evidence that the Government's evidence is incomplete or inaccurate." *United States v. Opitz*, 704 Fed. App'x 66, 68-69 (3d Cir. 2017).

### B.

Because this Court writes for the parties, it assumes familiarity with the factual and procedural history of this matter and addresses only those facts necessary to make a determination regarding restitution. Defendants Craig Cinelli ("Cinelli"), David Barteck ("Barteck"), and Michael Valenti ("Valenti") (collectively, "Defendants") pled guilty to conspiring to commit wire fraud in violation of 18 U.S.C. § 1349. Defendants' wrongful conduct arose from a seventeen-year conspiracy to "short-weight" scrap metal loads brought to Cinelli Iron & Metal Co., Inc. ("CIMCO") in order to wrongfully underpay corporate customers for those loads. In order to cover-up their scheme, Defendants destroyed receipts of those transactions (referred to as "tickets" or "Red & Whites"). (Tr. 23:10-24:11; 210-213; 216:17-18.)[2]

---

[1] Those crimes include wire fraud. *See e.g.*, *United States v. Jackson*, Crim. No. 16-547, 16-999, 2019 WL 5491559, at *4 (2d Cir. Oct. 25, 2019) (recognizing that restitution under the MVRA is required for wire fraud) (citing 18 U.S.C. § 3663(a)(1)); *United States v. Giudice*, Crim. No. 13-495, 2020 WL 220089, at *5-6 (D.N.J. Jan. 15, 2020) (noting that where defendant pled guilty to mail and wire fraud, restitution was mandatory under the MVRA); *United States v. Ganz*, 90 F. Supp. 3d 388, 391-92 (E.D. Pa. 2015).

[2] Citations to "Tr." refer to the Hearing transcript.

The restitution proposed by the Government is comprised of two main parts: non-extrapolated losses and extrapolated losses. The non-extrapolated losses were calculated by analyzing recovered Red & Whites and determining the difference between the original weight composition of the scrap loads and the reduced weight that was given to customers. (Tr. 24-64; Gov't Ex. 110A-110F, 120.) The Government then applied a 40% "discount applicator" to adjust the cost of materials from the market price to the contract price and limited its analysis to victims who suffered more than $3,000.00 in loss or were victims of ten or more Red & Whites. (Tr. 48-49.) Defendants do not challenge the amount of non-extrapolated losses, except to argue that the amount should be reduced by $158.50 to account for minor errors. (Tr. 257:15-258:8; Def. Ex. CC-2, Report of Rebecca Fitzhugh ("Fitzhugh Report") ¶ 23.) Crediting Defendants' expert witness and reducing the losses by $158.50, this Court finds that the non-extrapolated losses are $2,733,170.87.

The Government also used non-extrapolated losses to extrapolate the victims' damages over the entire course of the conspiracy. (Tr. 29-30.) This Court is satisfied that the use of extrapolation as a general matter is permissible and is appropriate here. *See United States v. Murray*, 468 Fed. App'x 104, 110 (3d Cir. 2012) (permitting the use of "reliable extrapolations from representative sample data"); *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009) (noting that a "district court may make a reasonable estimate by extrapolating the average amount of loss from known data and applying that average to transactions where the exact amount of loss is unknown"); *United States v. Citarelli*, 187 F. Supp. 2d 244 (D.N.J. 2002). Although Defendants challenge the Government's extrapolation as "excessively speculative" (*see* Fitzhugh Report ¶¶ 23-37; Tr. 122:11-19, 236:15-25; 248:6-19), the Defendants bear full responsibility for the destruction of evidence that prevented the Government from precisely calculating victim losses. Defendants cannot create the conditions that require extrapolation and then argue that it is inappropriate. Further, this Court finds that the Government, by excluding two years of losses and using contract instead of market prices as a basis for their calculations, has proven by a preponderance of the evidence that it has arrived at a conservative and reasonable estimate. (*See* Gov't Ex. 110A-1, 120, 430.) Defendants only generally challenge the Government's calculation, and fail to provide an alternative means of calculating restitution. (*See generally* Def. Ex. CC-2.) As such, this Court finds that the extrapolated losses of $22,752,397.20 are appropriately calculated.[3]

Restitution includes $29,807.50 in attorneys' fees and costs incurred by Brandenburg Industrial Service Company ("Brandenburg") in responding to the Government's subpoenas and

---

[3] Restitution in this matter shall not include damages of $3,621,203.67 sought by Consolidated Edison Company of New York ("ConEd") for payments CIMCO failed to make for scrap metal loads CIMCO picked up between April 3, 2017 and August 17, 2017. (Gov't Ex. 300B; Tr. 81:14-87:12.) CIMCO's failure to pay ConEd for those loads is wholly separate from the "short-weighting" scheme. ConEd does not argue that it was underpaid for its loads, but rather that it was never paid at all. To be a "victim" for purposes of restitution under the MVRA, "a party must have endured a financial loss that was 'directly and proximately' *caused* by a defendant's fraud." *United States v. Calderon*, 944 F.3d 72, 94-95 (2d Cir. 2019) (emphasis in original). Because Defendants' "short-weighting" scheme did not cause ConEd's loss, restitution is not appropriate. This Court's ruling has no bearing on ConEd's right to pursue civil claims against Defendants to recoup these alleged losses.

participating in the investigation and prosecution of Defendants. (Gov't Ex. 400; Tr. 56:23-57:12.) Such losses are recoverable under 18 U.S.C.A. § 3663(A)(b)(1) and (4).

In sum, this Court finds that Defendants are joint and severally liable[4] for restitution in the amount of $25,485,568.07.

## **CONCLUSION**

Defendants shall be jointly and severally liable for restitution in the amount of $25,485,568.07. A list of victims and respective loss amounts shall be attached to the Amended Judgment. An appropriate order follows.

___/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties

---

[4] Joint and several liability is appropriate where all defendants participated in a criminal scheme, even though an individual defendant may not have directly caused a specific victim's loss. *See e.g.*, *United States v. Moeser*, 758 F.3d 793, 797 (7th Cir. 2014) (stating that "co-conspirators are held jointly and severally liable for all foreseeable losses within the scope of their conspiracy regardless of whether a specific loss is attributable to a particular conspirator"); *United States v. Martinez*, 610 F.3d 1216 (10th Cir. 2010); *United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003); *United States v. Teadt*, 653 Fed. App'x 421, 429 (6th Cir. 2016); *United States v. Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 487 (D.N.J. 2009) (recognizing that "co-conspirators are jointly and severally liable for losses caused by the foreseeable acts of their co-conspirators, and this principle applies in ordering restitution for losses caused by the conspiracy"). Here, all Defendants pled guilty to the conspiracy and were aware of and participated in the acts in furtherance of their criminal objective. (*See* Tr. 172:21-25; 242:13-243:20; 217:9-20; 164:25-165:7; 213:25-214:22; 213:25-21 6:12; 215:14-216:12. The fact that only some of the Defendants were owners of CIMCO, were not involved in certain accounts, or did not directly profit from the short-weighting does not alter their liability.